

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GUY R. EUGENIO and LYNN L. MAINAAUPO-EUGENIO,<br><br>        Debtors. | Case No.: 13-00833<br>Chapter 13 |
| CONTINENTAL PACIFIC, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>GUY R. EUGENIO and LYNN L. MAINAAUPO-EUGENIO,<br><br>        Defendants. | Adv. Pro. No. 13-90020<br><br><br><br><br>Re: Docket No. 40 |

### ORDER DENYING DEFENDANTS' MOTION
### TO SET ASIDE SUMMARY JUDGMENT

This is a summary possession action that the debtors' landlord removed to this court. For the reasons set forth below, I will DENY the debtors' motion to set aside my prior order granting summary judgment in favor of the landlord.

# FACTS

This case involves a dwelling in Kahuku, Hawaii. The dwelling is in Kahuku Village, a community that was originally occupied by employees of a nearby plantation and their families. After the plantation ceased operations, the landowner leased the land on a month-to-month basis to a tenant's association, the Kahuku Village Association. The association in turn allowed the workers and their families to occupy the dwellings.

In or around 2006, Continental Pacific, LLC ("Continental"), acquired the "Kahuku Village" property, subject to the month-to-month lease in favor of the Kahuku Village Association. Continental apparently told the residents that, if its development plans were approved, it intended to offer the residents the chance to buy the fee simple interest in the individual lots for as little as $75,000. Dkt. 55-1 at 3-4.

In May 2011, Continental notified the tenants that it would terminate its lease with the Kahuku Village Association. Continental told the residents that it would enter into individual month-to-month leases with each of them. Continental also told the residents that it "still hopes to offer the fee on the land to current residents at a preferential price." Continental also said, however, that, because Continental had been required to conduct an expensive environmental impact statement and construct infrastructure which were not part of its original plans, the "anticipated purchase price" would be $150,000 per lot. Dkt. 55-1 at 6.

On July 28, 2011, the debtors and defendants, Guy and Lynn Eugenio, as

2

tenants, and Continental, as landlord, entered into a Lease Agreement. Dkt. 1 at 9. The Lease Agreement provides for a month-to-month tenancy.

On February 27, 2012, Continental Pacific notified the Eugenios that it intended to convert Kahuku Village to a condominium property regime. In preparation for the condominium conversion, Continental Pacific began a road widening project. The Lease Agreement empowers the landlord to withdraw from the leased premises land and rights of way for roads and gives the landlord a right of entry for road installation purposes.

In June 2012, Continental Pacific told the Eugenios that its contractors and surveyors were going to enter the leased property to widen the adjoining road and remove a fence that was in the way. Mr. Eugenio refused access and told Continental he would call the police if anyone attempted to enter "his" property.

On June 21, 2012, Continental Pacific gave the Eugenios 45 days notice of termination of the Lease Agreement. The notice said that the Eugenios had breached the lease by failing to pay late fees and interest and refusing access to the premises. The notice also purported to exercise Continental Pacific's right to terminate the month-to-month lease.

Continental Pacific commenced a summary possession action which came on for trial in state court in September 2012. The state court held that 120 days notice of termination was required and dismissed the action.

On September 7, 2012, Continental Pacific gave a 120-day notice of termination. The 120 day period expired on January 6, 2013, but the Eugenios did

U.S. Bankruptcy Court - Hawaii   #13-90020   Dkt # 59   Filed 08/29/13   Page 3 of 9

not vacate the property.

On November 21, 2012, Continental notified the Kahuku Village residents that they could purchase their lots for $150,000 each and that they had thirty days to sign an appropriate contract. Dkt. 11-3 at 26. The Eugenios apparently received this offer but did not accept it. Dkt. 11-3 at 41-42.

On January 14, 2013, Continental Pacific commenced another summary possession action in state court.

On March 12, 2013, the Eugenio's attorney, acting for the Kahuku Plantation Residents Association of which the Eugenios are members, sent a complaint to the Hawaii Real Estate Commission and the Regulated Industries Complaints Office ("RICO") arguing that it should revoke the approval of the public report for Continental Pacific's condominium project. The complaint alleged that the public report contained false statements and omitted material facts.

On May 22, 2013, on the eve of trial in the state court, the Eugenios filed a chapter 13 petition. Continental timely removed the summary possession action to this court and filed a motion for summary judgment. The Eugenios filed no written response to the motion and made no appearance at the hearing. The court granted the plaintiff's motion.

A week after the hearing, on July 19, 2013, the Eugenios filed a motion to set aside the order and judgment. Dkt. 40. The Eugenios stated that they did not appear at the hearing because their attorney had a medical emergency and was engaged in the meeting of creditors in their main bankruptcy case. I scheduled a

4

further hearing on the motion for summary judgment and stayed enforcement of the judgment for possession until the conclusion of the hearing.

At the hearing, it appeared that the health problems of the Eugenios' counsel made it difficult for him to present oral argument. I therefore allowed the parties to submit supplemental memoranda on the motion for summary judgment. The parties have filed those memoranda and the case is ready for decision.

## DISCUSSION

### *Purchase Option*

The Eugenios make several arguments based on an alleged option to purchase their property from Continental. Each argument fails.

1. The Eugenios argue that a developer who converts an existing tenanted project to a condominium cannot remove an existing tenant from the property unless the developer makes a valid offer to sell the unit to the tenant.

    a. The Eugenios cite no authority for this argument and none exists. Under Hawaii law, condominium developers are <u>not</u> required to offer units to existing tenants.

    b. Even if Continental were required to offer a unit to the Eugenios, Continental did so. The Eugenios do not dispute that Continental offered to sell them the property for $150,000. The Eugenios argue that the offer was insufficient, but this contention is also incorrect.

        i. They claim that Continental could not offer them a condominium unit because Continental had not validly created a condominium.

5

U.S. Bankruptcy Court - Hawaii   #13-90020   Dkt # 59   Filed  08/29/13   Page 5 of 9

They say this is so because "the developer cannot legally seek a CPR status until the developer has completed all infrastructure at thee [sic] development sites [sic]." Dkt. 55 at 3. This proposition is incorrect, and the Eugenios cite no authority to support it. Nothing in the condominium statute provides that a CPR cannot be created until all project improvements have been completed.

    ii. They make the related claim that Continental could not sell them a condominium unit because Continental had not completed the infrastructure. This assertion is also untrue. Developers cannot sell units until they have submitted, obtained approval of, and distributed to buyers a public report. Haw. Rev. Stat. § 514B-82 (2006). Continental has complied with these requirements.

    iii. They claim that the public report is invalid because it contains false statements and omits material facts. They have complained to the Real Estate Commission about this, but the Commission has apparently taken no action. In any event, it is at least ironic for the Eugenios to argue that the offer to sell the property to them is invalid because the public report does not disclose alleged facts of which the Eugenios are already aware.

    iv. Finally, they claim that the offer was insufficient because it did not give them credit against the purchase price for the rent they paid to Continental and its predecessor in interest. Continental never made a binding offer of a rent credit to the Eugenios. Continental apparently floated the idea of a rent credit in connection with its original development plan, which was not

6

approved. Further, Continental informed the Eugenios that no rent credit would be allowed <u>before</u> the Eugenios signed the Lease Agreement. Dkt. 55-1 at 6. The Eugenios did not reasonably rely on any assurances regarding a rent credit when they signed the Lease Agreement or paid rent under it. Continental had no obligation to offer a rent credit to the Eugenios.

2. The Eugenios claim that Continental had previously offered to sell the lot for $75,000 but that Continental unilaterally and wrongfully revoked that offer. There is no evidence that Continental made such an offer. At best, the record establishes that, at one time, Continental told the Eugenios that, if its overall development plans were approved, it hoped to be able to offer the lot to them at a bargain price, perhaps as low as $75,000. This conditional statement of intention to make a proposal in the future is not an "offer" which the Eugenios could accept. Restatement (Second) of Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").

Therefore, Continental had no obligation to sell the lot to the Eugenios.

### *Retaliatory Eviction*

Hawaii statutory law forbids certain kinds of retaliatory evictions:

> (a) Notwithstanding that the tenant has no written rental agreement or that it has expired, so long as the tenant continues to tender the usual rent to the landlord or proceeds to tender receipts for rent lawfully withheld, no action or proceeding to recover possession of the dwelling unit may be maintained against the tenant, nor shall the landlord otherwise cause the tenant to quit the dwelling unit

U.S. Bankruptcy Court - Hawaii   #13-90020   Dkt # 59   Filed  08/29/13   Page 7 of 9

> involuntarily, nor demand an increase in rent from the tenant; nor decrease the services to which the tenant has been entitled, after:
>
>> (1) The tenant has complained in good faith to the department of health, landlord, building department, office of consumer protection, or any other governmental agency concerned with landlord-tenant disputes of conditions in or affecting the tenant's dwelling unit which constitutes a violation of a health law or regulation or of any provision of this chapter; or
>>
>> (2) The department of health or other governmental agency has filed a notice or complaint of a violation of a health law or regulation or any provision of this chapter; or
>>
>> (3) The tenant has in good faith requested repairs under section 521-63 or 521-64.
>
> (b) Notwithstanding subsection (a), the landlord may recover possession of the dwelling unit if:
>
> * * *
>
> (7) The landlord is seeking to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant previous to the complaint or request of subsection (a).

Haw. Rev. Stat. § 521-74 (2006).

The statutory right does not help the Eugenios. The retaliatory eviction defense arises only if the landlord takes action "after" the tenant has made a qualifying complaint or request. There is no evidence that the Eugenios made any complaint or request until after Continental began summary possession proceedings. Likewise, the statute does not bar the enforcement of a notice to terminate a periodic tenancy, such as the Eugenios' month-to-month lease, given before the tenant makes a complaint or request.

Hawaii law also affords a common law defense of retaliatory eviction that is

8

broader than the statutory defense. "[W]here a tenant asserts a statutory right, in the protection of his property interest as a tenant, and as a result the landlord seeks to dispossess the tenant through summary possession proceedings, the tenant can assert an affirmative defense of retaliatory eviction." Windward Partners v. Delos Santos, 59 Haw. 104, 116 (1978). While the statute applies only to residential tenants, the common law doctrine is equally available to non-residential tenants. Id. at 117.

The Eugenios have failed to offer any evidence that Continental started eviction proceedings "as a result" of the Eugenios' exercise of any statutory rights. In fact, the Eugenios did not make any complaints to any agency until after the eviction was started.

## CONCLUSION

The Eugenios' motion to set aside the order for summary judgment and writ of possession (dkt. 40) is DENIED. The stay of enforcement of the Judgment for Possession (dkt. 39) is terminated.

***END OF ORDER***

9